**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vicky Belmonte, | No. CV-13-01937-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Vicky Belmonte seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.     Background.**

Plaintiff was born in March 1984. Plaintiff has an eighth grade education and has no past relevant work experience. On August 11, 2009, Plaintiff protectively filed a Title XVI application for supplemental insurance income. On August 21, 2009, Plaintiff filed a Title II application for disability insurance benefits. In both applications, Plaintiff alleged disability beginning July 31, 2007. On November 22, 2011, she appeared with her attorney and testified at a hearing before the ALJ. Plaintiff's request to amend the alleged onset date to August 11, 2009 was granted. On November 30, 2011, the ALJ

issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision.

**II.   Legal Standard.**

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111.

**III.   Five-Step Sequential Evaluation Process.**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not

disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2014, and that she has not engaged in substantial gainful activity since August 11, 2009. At step two, the ALJ found that Plaintiff has the following severe impairments: epilepsy and migraine headaches. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. At step four, the ALJ found that Plaintiff has the RFC to perform:

> [A] range of medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c) and SSR 83-10 specifically as follows: the claimant can lift and/or carry 50 pounds occasionally and 25 pounds frequently; she can stand and/or walk for six hours out of an eight-hour workday with regular breaks; she can sit for six hours out of an eight-hour workday with regular breaks; she is unlimited with respect to pushing and/or pulling, other than as indicated for lifting and/or carrying; she should not work around heights or moving machinery; she should not drive.

The ALJ further found that Plaintiff has no past relevant work. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

**IV.    Analysis.**

Plaintiff argues the ALJ's decision is defective for four reasons: (1) the ALJ erroneously weighed medical source evidence, (2) the ALJ improperly evaluated Plaintiff's credibility and discounted her subjective testimony, (3) the ALJ improperly evaluated third-party testimony, and (4) the ALJ improperly applied the medical-vocational rules. The Court will address each argument below.

**A.    Weighing of Medical Source Evidence.**

Plaintiff argues that the ALJ improperly weighed the medical opinions of the following medical sources: treating neurologist Steve S. Chung, M.D. (Doc. 14 at 14-16), treating neurologist Justin X. Mussomeli, M.D. (*id*. at 16-17), and consultative examiners Omer Ahmed, M.D. and Jacqueline Farwell, M.D. (*id*., 12, 18). The Court will address the ALJ's treatment of each opinion below.

**1.    Legal Standard.**

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A

- 4 -

contradicted opinion of a treating or examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

### 2. Steve S. Chung, M.D.

Plaintiff's treating neurologist, Steve S. Chung, M.D., completed a check-the-box form in February 2011 offering the following opinions: Plaintiff's seizures and headaches limit her ability to perform work-related activities; Plaintiff would experience seizures lasting 0-5 minutes approximately 4-5 times per week; Plaintiff's symptoms were increased by stress and sleep deprivation; Plaintiff had total restrictions as to unprotected heights, being around moving machinery, exposure to marked changes in temperature or humidity, and driving automotive equipment; and Plaintiff had moderate restrictions as to exposure to dust, fumes, and gases. A.R. 405-06. The ALJ accorded Dr. Chung's opinion limited weight. A.R. 20.

Dr. Chung's opinion was contradicted by the opinion of consultative examiners Omer Ahmed, M.D. and Jacqueline Farwell, M.D. A.R. 305-12, 327-33. Both physicians opined that Plaintiff had greater abilities than those identified in Dr. Chung's opinion. The ALJ could, therefore, discount Dr. Chung's opinion for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31.

The ALJ provided three reasons for declining to give Dr. Chung's opinion controlling weight. First, the ALJ asserted that Dr. Chung's opinion was too vague to be useful and failed to specify limitations. A.R. 20. This is a legitimate reason for according Dr. Chung's opinion reduced weight. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (stating that an ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings); 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Because Dr. Chung's opinion states that Plaintiff's seizures are of short duration and can be decreased with medication, it is not clear whether and to what extent Plaintiff would have work-related restrictions.

Second, the ALJ asserted that the limitations included in Dr. Chung's opinion were never mentioned in his numerous treatment records. A.R. 20. It does not appear that any of Dr. Chung's treatment notes recommend that Plaintiff take anything more than standard seizure precautions, such as avoiding driving, unprotected heights, and machinery. Dr. Chung's medical opinion stating that Plaintiff has severe work-related restrictions is therefore anomalous. The ALJ also observed that Dr. Chung's medical notes indicate that Plaintiff's symptoms could be controlled with medication and other forms of treatment. *See Warre ex rel. E.T. IV v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling."). For example, Dr. Chung noted that Plaintiff's condition improved when she was medicated and that she had no seizures for a 45-day period. A.R. 282-86. In addition, after Plaintiff underwent surgery to implant a vagal nerve stimulator ("VNS"), Plaintiff reported that she was usually able to stop her seizures at the onset with her VNS. A.R. 381-83. Incongruity between a doctor's medical opinion and

treatment records or notes is a specific and legitimate reason to discount a doctor's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Third, the ALJ asserted that the limitations included in Dr. Chung's opinion are not supported by any objective testing or reasoning. A.R. 20. The clinical and objective tests analyzed by Dr. Farwell, including long-term EEG monitoring and 2008 and 2009 studies by the Barrow Neurological Institute, suggested far less restrictive limitations than those contained in Dr. Chung's opinion. A.R. 312. In addition, Plaintiff had a normal MRI and an EMU that showed rare multifocal and bitemporal epileptiform discharges with no focal slowing at a 2011 clinical study performed at the Barrow Neurology Clinic. A.R. 417. The Court concludes that this was a valid reason to discount Dr. Chung's opinion.

Plaintiff argues the ALJ improperly discounted Dr. Chung's opinion by relying on treatment notes indicating that Plaintiff's condition improved with medication. Doc. 14 at 15. Plaintiff asserts that the limitations included in Dr. Chung's opinion took account of the improvement she experienced as a result of treatment. *Id*. at 16. The Court cannot agree. Dr. Chung opined that Plaintiff suffered from epileptic seizures four to five times per week. The improvements reported by Plaintiff when she followed the treatment plans prescribed by Dr. Chung are not consistent with the severe restrictions in his opinion.

The ALJ relied on specific, legitimate, and permissible reasons to discount Dr. Chung's opinion, and those reasons are supported by substantial evidence. The Court concludes that the ALJ did not commit legal error.

### 3. Justin X. Mussomeli, M.D.

Plaintiff's treating neurologist, Justin X. Mussomeli, M.D., completed a check-the-box form in January 2010 offering the following opinions: Plaintiff's seizures limit her ability to perform work-related activities; Plaintiff would experience daily seizures; Plaintiff had total restrictions as to unprotected heights, being around moving machinery, exposure to marked changes in temperature or humidity, driving automotive equipment,

and exposure to dust, fumes, and gases. A.R. 412-13. The ALJ accorded Dr. Mussomeli's opinion limited weight. A.R. 20.

Dr. Mussomeli's opinion was contradicted by the opinion of consultative examiners, Drs. Ahmed and Farwell. A.R. 305-12, 327-33. Both physicians opined that Plaintiff had greater abilities than those identified in Dr. Mussomeli's opinion. The ALJ could, therefore, discount Dr. Mussomeli's opinion for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31.

The ALJ provided the same three reasons for declining to give Dr. Mussomeli's opinion controlling weight as were provided to discount Dr. Chung's opinion above. First, the ALJ asserted that Dr. Mussomeli's opinion was too vague to be useful and failed to specify limitations. *See Bray*, 554 F.3d at 1228. Dr. Mussomeli's opinion provided the ALJ with very little information. The opinion states that Plaintiff has daily seizures without disclosing the intensity or duration of the seizures. It also states that Plaintiff should be totally restricted from unprotected heights, being around moving machinery, exposure to marked changes in temperature and/or humidity, driving automotive equipment, and exposure to dust, fumes, and gases, but it qualifies the statement by adding that Plaintiff "cannot do any [of the activities] while having a seizure." A.R. 413. Without more, it is unclear how these restrictions should figure into the RFC, and they are not obviously inconsistent with the RFC above.

Second, the ALJ asserted that the limitations included in Dr. Mussomeli's opinion were never mentioned in his numerous treatment records. In making this assertion, the ALJ relied on the fact that Dr. Mussomeli's treatment notes indicate that Plaintiff had relatively common and non-severe symptoms of epilepsy that could be improved with treatment. For example, in May 2009, Dr. Mussomeli noted that Plaintiff's seizures were "under much better control" and that she could work so long as she was not driving or exposed to unprotected heights. A.R. 352-53. In August 2009, Dr. Mussomeli wrote that Plaintiff was only having one seizure per month. A.R. 350-51. In October 2009, months after Plaintiff's alleged disability onset date, Dr. Mussomeli noted that Plaintiff was

1 "doing quite well from a seizure perspective" and that she had not had a seizure while observing her current medication regime. A.R. 348-49. These treatment notes do not support the restrictive limitations included in Dr. Mussomeli's medical opinion. As mentioned above, incongruity between a doctor's medical opinion and treatment records or notes is a specific and legitimate reason to discount a doctor's opinion. *Tommasetti*, 533 F.3d at 1041.

Third, the ALJ asserted that the limitations included in Dr. Mussomeli's opinion are not supported by any objective testing or reasoning. A.R. 20. In addition, to the evidence identified above, Dr. Mussomeli's own treatment notes provide a different explanation for Plaintiff's seizures – Plaintiff failed to follow her prescribed course of treatment on a number of occasions. For example, in April 2009, Dr. Mussomeli noted that Plaintiff had 2-3 seizures per week, but he also noted that she was not using her medication. A.R. 353-54. At the hearing, Plaintiff testified that she stopped taking her medications in July 2008 because she did not believe they were working. A.R. 39. In addition, Plaintiff's medication blood levels were too low at several visits, including a visit in April 2009 (A.R. 353-54), two visits in January 2010 (A.R. 320-22), and a visit in March 2010 (A.R. 319), suggesting that she had been noncompliant with her medication regime. The Court concludes that this was a legitimate reason supported by substantial evidence to discount Dr. Mussomeli's opinion.

Plaintiff argues that the ALJ improperly discounted Dr. Mussomeli's opinion by relying on treatment notes indicating that Plaintiff's condition improved with medication. Doc. 14 at 15. Plaintiff asserts that the limitations included in Dr. Mussomeli's opinion took account of the improvement she experienced as a result of treatment. *Id*. at 16. As with the opinion provided by Dr. Chung, the Court cannot agree. Dr. Mussomeli opined that Plaintiff would experience such seizures on a daily basis. The improvements reported by Plaintiff when she followed the treatment plans prescribed by Dr. Mussomeli are not consistent with the severe restrictions in Dr. Mussomeli's opinion.

The ALJ relied on specific, legitimate, and permissible reasons to discount Dr. Mussomeli's opinion, and those reasons are supported by substantial evidence. The Court concludes that the ALJ did not commit legal error.

### 4. Consultative Examiners Omer Ahmed, M.D. and Jacqueline Farwell, M.D.

Plaintiff argues that the ALJ committed legal error by according the opinions of Drs. Ahmed and Farwell great weight because they are non-treating, non-examining physicians. Doc. 14 at 12, 18. Relying on the evidence outlined above, the ALJ provided specific and legitimate reasons, drawn from the medical record, to justify the decision to credit the opinions of Drs. Ahmed and Farwell over the opinions of Plaintiff's treating physicians. Because the opinions of Drs. Ahmed and Farwell were supported by independent clinical findings, they constitute substantial evidence. *Thomas*, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.") (citation omitted). The Court concludes that the ALJ's decision to credit the opinions of Drs. Ahmed and Farwell was not legal error.

### 5. Dr. Chung's October 2013 Letter.

In October 2013, Dr. Chung sent a letter to the Appeals Council in which he reported that he was Plaintiff's treating neurologist and that Plaintiff "is unable to work due to her lifelong medical condition." A.R. 549. Plaintiff asserts that the Commissioner failed to adequately consider the letter (Doc. 14 at 18), but the Court can find no basis for this assertion. Dr. Chung's letter contains no new evidence of disability; instead, it merely expresses Dr. Chung's opinion on the ultimate issue of disability. The record discloses that the Appeals Council considered Dr. Chung's letter but did not find that it provided a basis for overturning the ALJ's decision. A.R. 2, 5. The Court concludes that the Appeals Council did not commit error because Dr. Chung's letter was not entitled to any deference. *See McLeod v. Astrue*, 640 F.3d 881, 884 (9th Cir. 2011) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it

is not binding on an ALJ with respect to the existence of an impairment or the ultimate issue of disability.").

### B. The ALJ Did Not Err in Evaluating Plaintiff's Credibility.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Second, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's RFC assessment. In other words, the ALJ found Plaintiff's statements not credible to the extent she claims she is unable to perform in a competitive work environment.

At the hearing, Plaintiff testified that, even with treatment and a VNS stimulator, she experiences mild, unpredictable seizures about four to five times per week. She stated that, while experiencing these mild seizures, she wears a blank stare and shakes. She testified that she requires one or two hours of rest to recover from a mild seizure. She also testified that she experiences grand mal seizures once or twice a month in which she bites her tongue, foams at the mouth, and drops to the ground in convulsions. Plaintiff testified that her neurologist insists only on standard restrictions for a person with epilepsy (i.e. no driving). Plaintiff stated that, because of her seizures, she was laid off from her job as a day care aid, she cannot cook for fear of burning herself, and she cannot shower without supervision. Plaintiff also stated that she experiences daily headaches that require her to lie down and recover in a dark room for an hour or two.

The ALJ gave the following reasons for finding Plaintiff's testimony not fully credible: (1) the objective evidence of record does not support her allegations regarding the severity of her symptoms and limitations, (2) Plaintiff received routine conservative treatment for her impairments.  A.R. 18.

In support of the first given reason, the ALJ cited the following medical evidence: a September 2007 MRI of Plaintiff's brain was negative, with the exception of a small polyp versus cyst within the right maxillary sinus (A.R. 241); Plaintiff underwent neurological assessments, which diagnosed migraines and epilepsy "under excellent control" with medications (A.R. 244); in August 2009, laboratory studies and a neurological examination were both normal and a CT of the brain came back negative (A.R. 375-76); a follow-up in October 2009 disclosed that Plaintiff was "doing quite well from a seizure perspective" apart from the fact that she was not following her recommended dosages (A.R. 348); an April 2010 neurological consultative examination performed by Dr. Ahmed disclosed that Plaintiff had seizure disorder with no physical abnormalities and that her only limitations would relate to sitting, standing, walking, lifting, and working around heights or moving machinery (A.R. 327-33); consultative examiner Dr. Farwell diagnosed Plaintiff with tonic-clonic seizures and partial complex seizures, opined that Plaintiff's seizures were not frequent enough to meet a seizure listing, and stated that no exertional limitations were warranted apart from standard seizure precautions (A.R. 312).

In support of the second reason, the ALJ noted that there was no evidence from their treatment notes suggesting that Dr. Chung or Dr. Mussomeli placed limitations on Plaintiff that resembled the limitations to which she testified.  A.R. 20.  As described above, the treatment notes suggest that Plaintiff had standard seizure-related restrictions placed on her and that her symptoms could generally be managed when she took anticonvulsive medications as prescribed.  *Id*.

Plaintiff argues that the ALJ improperly discounted Plaintiff's claims because he relied on SSR 87-6 to determine that her subjective complaints were less than fully credible (A.R. 20). Doc. 14 at 19. SSR 87-6 contains the following policy statement:

> As a result of a modern treatment which is widely available, only a small percentage of epileptics, who are under appropriate treatment, are precluded from engaging in substantial gainful activity. Situations where seizures are not under good control are usually due to the individual's noncompliance with the prescribed treatment rather than the ineffectiveness of the treatment itself. Noncompliance is usually manifested by failure to continue ongoing medical care and to take medication at the prescribed dosage and frequency. Determination of blood levels of anticonvulsive drugs may serve to indicate whether the prescribed medication is being taken.

Plaintiff asserts that SSR 87-6 creates a rebuttable presumption that seizures can be controlled by medication and that that presumption was rebutted in this case. Doc. 14 at 20. The Court agrees that SSR 87-6 creates the rebuttable presumption identified by Plaintiff. The Court finds, however, that substantial evidence supports the ALJ's assertions that "medical evidence indicates that the claimant's condition is controllable with proper medical treatment" and "the record indicates, on several occasions, that Ms. Belmonte has been non compliant (sic) with her medications." A.R. 21. As discussed above, the ALJ identified a handful of occasions in which Plaintiff reported (or blood tests disclosed) that she had not been compliant with her medications.

**C.     The ALJ Did Not Err in Evaluating Third-Party Credibility.**

Plaintiff's mother, Margarita Belmonte, submitted statements in support of Plaintiffs disability claim. A.R. 153-60, 173. Another relative, Maribel Belmonte, also submitted a statement in support of Plaintiff's claim. A.R. 224. The statements largely echoed the limitations to which Plaintiff testified.

Plaintiff argues that the ALJ improperly concluded that her relatives' statements were biased. Doc. 14 at 23. She asserts that the ALJ's conclusion is inappropriate

- 13 -

because he did not identify reasons to suspect improper bias on the part of Margarita and Maribel Belmonte. *Id*. The Court agrees that the ALJ provided no reason to justify his conclusion that the lay witnesses were biased and unreliable. This error is harmless, however, because the ALJ gave another reason to discount the witnesses' statements that is germane to both witnesses – the lay witnesses' statements conflict with objective medical evidence and the opinions of Drs. Ahmed and Farwell. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) (instructing that an ALJ may discount lay witness testimony so long as the ALJ gives reasons germane to the witness). The statements' conflict with objective medical evidence and medical opinions justified discounting the lay witness statements.

### D. The ALJ Did Not Err in Relying on the Medical Vocational Guidelines.

"At step five, the ALJ can call upon a vocational expert to testify as to: (1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). But an ALJ must not always utilize a vocational expert. In some cases, the ALJ may rely on Medical-Vocational guidelines, or "grids," which are "a matrix system for handling claims that involve substantially uniform levels of impairment." *Id.* at 1101 (citing 20 C.F.R. pt. 404, subpt. P, app. 2). "The Guidelines present, in *table form*, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Id.* (emphasis in original). "The Commissioner's need for efficiency justifies use of the grids at step five where they *completely and accurately* represent a claimant's limitation." *Tackett*, 180 F.3d at 1101 (emphasis in original). This means that a claimant "must be able to perform the *full range* of jobs in a given category, i.e., sedentary work, light work, or medium work." *Id.* (emphasis in original). The *Tackett* court noted that "significant non-exertional impairments . . . may make reliance on the [Guidelines] inappropriate," and that "pain can be a non-exertional limitation." *Id.* at 1101-02 (citing *Derosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988)).

In this case the ALJ relied exclusively on the grids to determine that Plaintiff was not disabled. Plaintiff argues that exclusive reliance on the grids was inappropriate because she has a combination of exertional and non-exertional limitations due to her epilepsy. Doc. 14 at 24-25. Plaintiff's argument misses the mark. So long as Plaintiff can perform the full range of jobs in a given category, the ALJ may rely exclusively on the grids, even if Plaintiff has non-exertional limitations. *Tackett*, 180 F.3d at 1101. Plaintiff has not explained what non-exertional limitations prevent the ALJ from relying on the grids or why the Court should conclude that Plaintiff's limitations prevent her from performing the full range of jobs in any given category. The Court concludes that the ALJ properly utilized the grids to determine that Plaintiff was not disabled.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **affirmed**. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 26th day of August, 2014.

_____
David G. Campbell
United States District Judge